IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JASON R. HOLLOWAY                                                  PLAINTIFF

VS.                                                CIVIL ACTION NO. 3:16-cv-26-FKB-FKB

MARSHALL FISHER, ET AL.                                     DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion for Summary Judgment [44] for Failure to Exhaust Administrative Remedies filed by Defendants Marshall Fisher, Jerry Williams, Gloria Perry, Ron King, Brian Ladner, James Fillyaw, Supt. Earnest Lee, Warden Sonja Sanciel, Deputy Warden Simon Lee, Lt. Jamaal Murriel, Lt. Kevin Nunn, Lt. Lorrance Cross, and Richard Pennington in this action brought pursuant to 42 U.S.C. § 1983. Defendants Dr. Gail Williams and Centurion of Mississippi, LLC, filed a Joinder [51] to the Motion for Summary Judgment.[1] Plaintiff, Jason R. Holloway, has responded to the motion. [47].

The Court held an Omnibus Hearing in this matter, at which time the parties consented to proceed before the undersigned United States Magistrate Judge, and the District Judge subsequently entered an Order of Reference. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Holloway is proceeding in this matter *in forma pauperis* and *pro se*.

For the reasons explained in this opinion, the Court finds that the motion for summary judgment [44] should be granted in part and denied in part, and Holloway's Motion response [47] should be granted in part and denied in part.

I.    CLAIMS

---

[1] After filing its Joinder, Centurion of Mississippi, LLC, was subsequently dismissed by an Order [60] entered on January 19, 2017.

Holloway alleges that his constitutional rights were violated while he was housed in the Mississippi Department of Corrections at Central Mississippi Correctional Facility ("CMCF") in October 2015, and thereafter when he was transferred to the Mississippi State Penitentiary, Parchman, Mississippi ("Parchman"), where he was housed in October and November 2015. Defendants are Dr. Gail Williams, who allegedly failed to provide adequate mental health care treatment at Unit 42, as well as current and former employees of MDOC: Marshall Fisher, the former Commissioner of MDOC; Jerry Williams; Gloria Perry; Ron King; Brian Ladner; James Fillyaw; Supt. Earnest Lee; Warden Sonja Sanciel; Deputy Warden Simon Lee; Lt. Jamaal Murriel; Lt. Kevin Nunn; and Richard Pennington ("MDOC Defendants").[2] In this action, Plaintiff's claims may be summarized as follows:

1. Plaintiff alleges that the MDOC Defendants failed to protect him from harm when he was raped by another inmate on October 1, 2015, at CMCF. [1] at 12-13.

2. Plaintiff alleges that after he underwent treatment at a private hospital, he was transported to the hospital at Unit 42 of the Mississippi State Penitentiary at Parchman, Mississippi, on October 14, 2015. He was housed at Unit 42 for approximately fifteen to seventeen days, after which time he was transferred to the East Mississippi Correctional Facility ("EMCF"), where he is currently housed. Plaintiff makes claims regarding his conditions of confinement for the period in which he was housed at Unit 42. *Id.* at 13-14, 15-17. More specifically, he claims that the facilities were filthy, were infested by vermin, had no hot water, had inadequate ventilation, and had inadequate lighting and plumbing. *Id.* at 15-17.

---

[2] Plaintiff dismissed his claims against Lt. Lorrance Cross at the omnibus hearing, and the Court subsequently

3. Plaintiff alleges that Defendant Dr. Williams denied him adequate medical and mental health treatment while he was housed at Unit 42. *Id.* at 17-20.[3]

In their filings, the MDOC Defendants acknowledge that Holloway did file and exhaust his administrative remedies on his claim that the MDOC Defendants failed to protect him from harm on October 1, 2015, when he was allegedly raped by another inmate at CMCF. *See* [44] at 2 n.1. The MDOC Defendants argue, however, that Holloway failed to exhaust his administrative remedies as to his conditions of confinement claim and his denial of adequate mental health and medical care treatment claims.

## II. RELEVANT STANDARDS

Rule 56 of the Federal Rules of Civil Procedure states, in relevant part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine if the "'evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party.'" *Lemoine v. New Horizons Ranch and Center*, 174 F.3d 629, 633 (5th Cir. 1999)(quoting *Colston v. Barnhart*, 146 F.3d 282, 284 (5th Cir.), *cert. denied*, 119 S.Ct. 618 (1998)). Issues of fact are material if "resolution of the issues might affect the outcome of the suit under governing law." *Lemoine*, 174 F.3d at 633. The Court does not, "however, in the absence of any proof, assume the nonmoving [or opposing] party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(emphasis omitted). Moreover, the non-moving party's burden to come forward with

---

entered a Text Only Order on November 30, 2016, dismissing Cross as a Defendant.

[3] Additionally, Holloway has previously dismissed his claims against two other Centurion employees, Gregory Johnson and Dr. William Barr. At the omnibus hearing, Holloway dismissed his claim of denial of access to the courts. *See* Text Only Order entered November 30, 2016.

"specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), is not satisfied by "conclusory allegations" or by "unsubstantiated assertions," or by only a "scintilla" of evidence. *Little*, 37 F.3d at 1075.

Statutory law and case law require a prisoner to exhaust administrative remedies, regardless of the relief sought, before bringing a § 1983 action in federal court. The relevant portion of 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act of 1995 (PLRA), states the following:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a)(Supp. 2000). In *Booth v. Churner*, 121 S.Ct. 1819 (2001), the Supreme Court held that 42 U.S.C. § 1997e, revised as a part of the PLRA, requires an inmate to exhaust administrative remedies before bringing an action with respect to prison conditions, regardless of the relief offered through administrative procedures. *Booth*, 121 S.Ct. at 1825. The United States Supreme Court further explained that the PLRA's exhaustion requirement is mandatory and applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *See Porter v. Nussle*, 122 S.Ct. 983 (2002); *see also Jones v. Bock*, 127 S.Ct. 910 (2007)(reaffirming that exhaustion is mandatory; stating that it is an affirmative defense).

The United States Court of Appeals for the Fifth Circuit has reiterated the principles found in these cases. In *Gonzales v. Seal*, 702 F.3d 785 (5th Cir. 2012), the Fifth Circuit recognized that exhaustion of administrative remedies prior to suit is mandatory, and that district courts have no discretion to stay § 1983 prisoner cases when they are filed before prisoners have

exhausted administrative remedies. The Fifth Circuit concluded, as follows:

> District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.

*Id.* at 788. Moreover, "[i]t is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion." *Walker v. East Miss. Corr. Facility*, 2013 WL 4833901 (S.D. Miss. Sept. 11, 2013)(citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)(finding that filing an initial grievance, without more, did not equate to exhaustion)); *see also Tompkins v. Holman*, 2013 WL 1305580 (S.D. Miss. Mar. 26, 2013)(dismissing § 1983 complaint for failure to exhaust administrative remedies when prisoner filed a grievance, but did not complete the ARP before filing his lawsuit).

The Court is mindful, moreover, that because "exhaustion is an affirmative defense, the burden is on [the movant] to demonstrate that [a prisoner plaintiff] failed to exhaust available administrative remedies." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). Nevertheless, factual disputes related to exhaustion may be resolved by a judge without resort to a jury. *Id.* at 272.

In limited circumstances, courts have determined that a prisoner's ailment which prohibited him from pursuing administrative remedies excuses exhaustion. *See Days v. Johnson*, 322 F.3d 863 (5th Cir. 2003)(excusing non-exhaustion of administrative remedies because of physical injury and subsequent rejection of grievance due to untimeliness). However, in other cases, courts did not excuse exhaustion when prisoners alleged that physical ailments prevented

them from exhausting their administrative remedies. *See Ferrington v. Louisiana Dep't of Corr.*, 315 F.3d 529 (5th Cir. 2002)(Plaintiff-inmate's blindness did not excuse him from exhausting administrative remedies.). Exhaustion is mandatory, "irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 739 (2001). Put another way, "[t]he requirement of exhaustion applies regardless of Plaintiff's opinion on the efficacy of the institution's administrative remedy program." *Nealy v. Moore*, 2013 WL 6230107, *3 (S.D. Miss. Nov. 30, 2013)(citing *Alexander v. Tippah Co.*, 351 F.3d 626, 630 (5th Cir. 2003)).

With these standards in mind, the Court turns to evaluate whether Plaintiff's failure to exhaust should be excused.

### III. DISCUSSION

Defendants have presented authenticated records related to two different grievances that Holloway filed with the MDOC's Administrative Remedy Program ("ARP"), MSP-16-700 and MSP-16-355. MSP-16-700 concerns Holloway's living conditions at Parchman's Unit 42 during October and November 2015. [44-1]. MSP-16-355 contains Holloway's allegations of denial of adequate mental health care and medical care while housed at Unit 42 during the same time period. [44-2].

#### A. MSP-16-700

The request for administrative remedy MSP-16-700 was originally signed and dated by Holloway on November 8, 2015, and it was received by the ARP at Parchman on November 20, 2015. [44-1] at 3, 5. MSP-16-700 contained Holloway's complaints regarding the living conditions in Unit 42 and asserted allegations of poor lighting and plumbing, vermin

infestations, unsanitary conditions, poor ventilation, cold conditions, and lack of clean bedding. *Id.* at 3-4. MSP-16-700 was accepted into the ARP on November 30, 2015. *Id.* at 2. However, on December 4, 2015, Defendant Richard Pennington, the Director of the ARP, notified Holloway that MSP-16-700 was being "set aside for handling in due course" because the program had previously accepted ARPs from Holloway that were under review. *Id.* at 2, 6.[4] On May 19, 2016, the ARP issued a First Step Response in MSP-16-700, from which no appeal exists in Holloway's inmate file. *Id.* at 1, 8, 9. Thus, Defendants assert that Holloway did not proceed to the second step as to MSP-16-700, and, therefore, he did not exhaust his administrative remedies.

In the meantime, it appears that Holloway attempted to file another ARP based on the same conditions of confinement claims as set forth in MSP-16-700. In his Response [47], Holloway attaches a copy of MSP-16-354, originally signed by him on November 19, 2015, and that was rejected as untimely on February 17, 2016. [47-5] at 1.

Holloway argues that his requests for administrative remedies should not have been rejected as untimely because he was in the hospital and on suicide watch for almost a month after the October 1, 2015, event. [47] at 2. Holloway's hospitalization and suicide watch in October and early November 2015[5] do not excuse his failure to appeal MSP-16-700. The ARP issued a First Step Response for MSP-16-700 on May 19, 2016, long after he had been released from the hospital, removed from suicide watch, and moved to EMCF. Accordingly, Plaintiff has failed to

---

[4] The Fifth Circuit has recognized that a facility's procedure of "backlogging" ARPs is constitutional and does not excuse a prisoner's failure to exhaust. *Wilson v. Boise*, 262 F.3d 1356 (5th Cir.)(unpublished), *cert. denied*, 122 S.Ct. 369 (U.S. 2001); *see also White v. Epps*, 2010 WL 2539659 (S.D. Miss. Mar. 3, 2010)(upholding MDOC's ARP backlogging system).
[5] According to his complaint, Holloway was hospitalized at Merit Health's Central Mississippi Medical Center in Jackson, Mississippi, from on or about October 1 to 14, [1] at 13, and he was admitted to the medical unit at

exhaust his administrative remedies as to his conditions of confinement claims at Parchman's Unit 42, and those claims are hereby dismissed.

B. MSP-16-355

Turning to MSP-16-355, Defendants have presented the authenticated records related to this request for administrative remedy, which was originally dated November 18, 2015, and recounts Holloway's allegations of denial of adequate mental health care and medical care while housed at Unit 42 in October 2015. [44-2]. Plaintiff has also submitted a copy of the same request for administrative remedy in response to the motion for summary judgment. [47-6]. On February 17, 2016, the ARP director rejected MSP-16-355 as untimely when he determined that the incident about which Holloway complained had occurred on October 15, 2015, and more than thirty (30) days had passed between the event and the receipt of the initial request. [44-2] at 2; [47-6] at 1.[6]

In his request for administrative remedy, Holloway recounts events occurring between October 14 and October 27, 2015. He asserts that a nurse discontinued his mental health care medications when he arrived at Parchman on October 14, 2015. [44-2] at 3; [47-6] at 2. He also asserts that on October 15, 2015, Defendant Dr. Gail Williams initially examined him, refused to restart the medications, and ridiculed him. *Id.* Holloway complains that on October 19, 2015, he talked to Nurse Johnson after being upset by nightmares. *Id.* at 4. Immediately thereafter, an officer returned him to suicide watch. *Id.* On October 23, 2015, Holloway relates that he saw

---

Parchman from October 14 to November 10, 2015. *Id.* at 13-14.
[6] Even so, the director's description of the receipt date of the initial request for administrative remedy is confusing, at best, due to a handwritten date and a line marked through the original type face date, thereby indicating receipt on either January 22, 2016, February 12, 2016, or December 22, 2016. *Id.* Furthermore, the date stamp of receipt on Holloway's request for administrative remedy indicates the month of December 2015, without an exact date. [44-2] at 3; [47-6] at 2.

˘8˘

Dr. Williams, to whom he complained that he needed mental health medication. *Id.* Holloway asserts that Dr. Williams offered to start him on Paxil and Tegretol, but after Holloway informed the doctor that he could not mix Tegratol with his seizure medication, the doctor walked out of his cell. *Id.* Holloway complains that on or about October 27, 2015, he saw Dr. Williams again and informed him that he was not taking the medications prescribed to him by Dr. Williams, so Dr. Williams stopped all of the medications and "didn't even try to put me on anything else." *Id.* at 4-5. Holloway also relates thereafter that Dr. Williams took everyone else, but him, off suicide watch, would not explain his reasoning behind his actions, and refused to provide Holloway with counseling or treatment. *Id.* at 5.

Holloway's original request for administrative remedy is dated November 18, 2015, which is the date the Court presumes that Holloway submitted his request for administrative remedy.[7] Under the ARP program established by the MDOC, inmates are required to submit the requests for administrative remedies within thirty days of an incident. *Howard v. Epps*, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). Because many of the incidents about which Holloway complains occurred within thirty days of his November 18, 2015, request for administrative remedy, the ARP director erred when he rejected MSP-16-355 as untimely, in its entirety. As the record stands, when the ARP director wrongly rejected MSP-16-355, Holloway no longer had an available administrative remedy. *See Dillon v. Rogers*, 596 F.3d 260, 267 (5th Cir. 2010); *see also Berry v. Wexford Health Sources*, 2016 WL 4030934 (S.D. Miss. July 26, 2016). Because the rejection removed Holloway's "available" administrative remedy,

---

[7] Under the mailbox rule, *pro se* prisoner filings are deemed filed as soon as they are deposited into the prison mail system. *See Medley v. Thaler,* 660 F.3d 833, 835 (5th Cir. 2011) (citing *Houston v. Lack,* 487 U.S. 266 (1988)); *see, e.g., Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (holding § 2254 applications deemed filed on date inmate tenders petition to prison officials for mailing).

exhaustion is not required. *See Berry,* 2016 WL 4030934 at *1. Accordingly, Defendants' Motion [44] and the related Joinder [51] are hereby denied with regard to claims based on MSP-16-355.

IV. CONCLUSION

For these reasons, the Court finds that the Motion for Summary Judgment Based on Failure to Exhaust Administrative Remedies [44], and the related Joinder [51], should be granted in part and denied in part. Likewise, Holloway's Motion response [47] is granted in part and denied in part. Accordingly, Plaintiff's claims regarding his conditions of confinement at Unit 42, as found in MSP-16-700, are hereby dismissed without prejudice. Therefore, the following Defendants, named by Plaintiff as employees of MDOC at Parchman, are dismissed without prejudice: Supt. Earnest Lee, Warden Sonja Sanciel, and Deputy Warden Simon Lee. The Motion [44] and Joinder [51] are denied as to Plaintiff's claims of denial of adequate mental health care and medical care at Parchman's Unit 42, as found in MSP-16-355.

By separate order, the Court will establish scheduling and discovery deadlines governing Holloway's remaining claims alleging: (1) failure to protect him based upon an alleged rape that occurred on October 1, 2015, while he was housed at CMCF, and (2) denial of adequate mental health care and medical care at Parchman's Unit 42.

SO ORDERED, this the 14th day of August, 2017.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE