IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

J.H.     PLAINTIFF

VS.     CIVIL ACTION NO. 3:16-cv-26-FKB-FKB

MARSHALL FISHER, ET AL.     DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion for Summary Judgment [101] filed by Defendants James Fillyaw, Marshall Fisher, Ron King, Brian Ladner, Jamaal Murriel, Kevin Nunn, and Richard Pennington[1] in this action brought pursuant to 42 U.S.C. § 1983. Plaintiff has responded to the Motion.

In its prior orders, the Court dismissed Plaintiff's claims against other Defendants. *See* [38], Text Only Order 11/30/16, [60], [63], [93]. Thus, at this juncture, Plaintiff's only remaining claim is that Defendants failed to protect him from harm on or about September 28, 2015, when he was allegedly raped by another inmate at the Central Mississippi Correctional Facility ("CMCF"). For the reasons outlined in this Memorandum Opinion and Order, the Court finds that Defendants' motion for summary judgment should be granted in part and denied in part.

I.     Facts

At the omnibus hearing, Plaintiff testified to the facts supporting his claim against the remaining Defendants. In sum, Plaintiff alleges that while he was incarcerated at CMCF, Defendants failed to protect him when, despite his protective custody status and despite his

---

[1] After this motion was filed, Plaintiff dismissed his claims against Defendant Pennington. *See* Motion to Dismiss [100], and Order [109].

˜1˜

warning to authorities that an inmate posed a threat to him, the inmate subsequently attacked and raped him. Named as Defendants are Marshall Fisher, former Commissioner of the Mississippi Department of Corrections ("MDOC"); Ron King, Superintendent of CMCF; James Fillyaw, Deputy Warden; Jamaal Murriel, officer; Kevin Nunn, officer; and Brian Ladner, Warden.

According to Plaintiff, the following sequence of events led up to the alleged attack on September 28, 2015. About one month prior to the alleged attack, Plaintiff, a protective custody inmate since 2006, wrote a letter to Defendants King, Ladner, and Fillyaw complaining that officers allowed general population inmates and protective custody inmates out of their cells at the same time. [1] at 9, 11. Thereafter, he submitted an emergency Administrative Remedy Program ("ARP") grievance protesting this situation. *Id.*; [101-1] at 6. Former Defendant Pennington rejected the grievance as not meeting the criteria for an emergency ARP grievance. [101-1] at 6.

Subsequently, a general population inmate, known to Plaintiff by the nickname, "Grim," kicked contraband (tobacco and marijuana) under Plaintiff's cell door. Plaintiff kicked the contraband back to Grim, and Grim then accused him of stealing some of the contraband and told Plaintiff, "I'm going to get you." *Id.* at 7, 9.

Plaintiff verbally reported the incident to Defendants Fillyaw, Murriel, and Nunn. *Id.* at 7-8. In response to Plaintiff's verbal complaints about Grim, Defendants Fillyaw, Murriel, and Nunn placed a protective custody sign on Plaintiff's cell door. *Id.* at 9. For a few days thereafter, Plaintiff chose to stay in his cell rather than exit when allowed. *Id.* However, a couple of weeks later, Grim withdrew his threat to Plaintiff. *Id.* Specifically, Grim told Plaintiff, "Don't even worry about it," and "I ain't even going to mess with you." *Id.* After Grim told him that, Plaintiff

did not think Grim posed a threat to him anymore. *Id.* at 11-12. Plaintiff testified that, about one week later, he exited his zone for recreation in a "day room," which was on the floor below Plaintiff's cell and near Grim's cell. *Id.* at 10-11. When Plaintiff exited his cell, he did not know that Grim's cell was open. *Id.* at 11. After Plaintiff arrived in the area, Grim, while standing at the open door of his cell, told Plaintiff to come to his cell. *Id.* at 10. Plaintiff testified that Grim told him, "I want to talk to you," and that "he was going to get me high." *Id.* Plaintiff then voluntarily walked to and entered Grim's cell. *Id.* Plaintiff asserts that, once he was inside the cell, Grim held him at knifepoint and raped him. *Id.* at 10-11. Plaintiff admits that, instead of entering Grim's cell, he could have chosen to return to his cell. *Id.* at 12. But, Plaintiff maintains that general population inmates should have been locked down when protective custody inmates were out of their cells for recreation. *Id.* at 11.

    II.    <u>Relevant Standards</u>

Rule 56 of the Federal Rules of Civil Procedure states, in part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine if the "'evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party.'" *Lemoine v. New Horizons Ranch and Center*, 174 F.3d 629, 633 (5th Cir. 1999)(quoting *Colston v. Barnhart*, 146 F.3d 282, 284 (5th Cir.), *cert. denied*, 525 U.S. 1054 (1998)). Issues of fact are material if "resolution of the issues might affect the outcome of the suit under governing law." *Lemoine*, 174 F.3d at 633. The Court does not, "however, in the absence of any proof, assume the nonmoving [or opposing] party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en

banc)(emphasis omitted). Moreover, the non-moving party's summary judgment burden is not satisfied by "conclusory allegations" or by "unsubstantiated assertions," or by only a "scintilla" of evidence. *Little*, 37 F.3d at 1075.

III. Discussion

A. Official Capacity Claims

Plaintiff has sued all Defendants in their official capacities. The Court finds that Plaintiff's claims for monetary relief are barred by the Eleventh Amendment and must be dismissed. The "Eleventh Amendment precludes suits in federal court against state officials named in their official capacities because such suits are essentially claims against the State." *Dandridge v. Mississippi*, Civil Action No. 2:08-cv-229-KS-MTP, 2009 WL 4940105, at \*6 (S.D. Miss. Dec. 14, 2009)(Starrett, J.). "The United States Supreme Court has applied the Eleventh Amendment prohibition against suit [against non-consenting states] to actions against state officials sued in their official capacity." *Waldrop v. Puckett*, No. 4:97-cv-42-B-B, 1998 WL 378308, at \*2 (N.D. Miss. Apr. 3, 1998)(Biggers, J.)(citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)).

Likewise, Plaintiff's claims for injunctive relief against Defendants in their official capacities are hereby dismissed. In his complaint, Plaintiff failed to identify any particular injunctive relief he desires. Moreover, Plaintiff has been moved to another facility, and he has failed to allege any ongoing violations of federal law to enjoin. *See Green v. Mansour*, 747 U.S. 64, 71 (1985)("Because there is no continuing violation of federal law to enjoin in this case, an injunction is not available.").

Accordingly, all defendants are entitled to dismissal of Plaintiff's claims against them in

their official capacities.

    B. Individual Capacity Claims

        1. Defendants Fisher, King, and Ladner

Plaintiff has sued Marshall Fisher, former Commissioner of the MDOC; Ron King, Superintendent of CMCF, and Brian Ladner, Warden of CMCF. In his complaint, Plaintiff fails to allege any facts supporting any claims against Fisher. Furthermore, at the omnibus hearing, Plaintiff admitted that Fisher was not personally involved in the events that are the basis of his complaint, and he admitted that he had sued Fisher only because he was in a position of authority. [101-1] at 18. As for Defendants King and Ladner, Plaintiff alleges that he wrote a letter and/or inmate request forms to them complaining about the mixing of protective custody and general population inmates at least one month prior to the attack. [1] at 11; [101-1] at 6, 21.

Well-settled section 1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates' actions. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691-95 (1978); *Thibodeaux v. Arceneaux,* 768 F.2d 737, 739 (5th Cir. 1985) (per curiam). Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury. *See Thompkins v. Belt,* 828 F.2d 298, 303 (5th Cir. 1987); *see also Grandstaff v. City of Borger,* 767 F.2d 161, 169-70 (5th Cir. 1985), *cert. denied,* 480 U.S. 916 (1987). Plaintiff admits that Fisher was not personally involved in the events forming the basis of his complaint, and he has failed to substantiate that Fisher implemented unconstitutional policies. *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992). Accordingly, Fisher is entitled to summary judgment in his favor.

However, Plaintiff's claims against King and Ladner are another matter. Although Plaintiff admitted at the omnibus hearing that he had sued King because he was in a position of authority, the Court finds that he has articulated a claim against both King and Ladner that they may have implemented an unconstitutional policy or custom. Plaintiff has alleged in his complaint and testified at the omnibus hearing that, at least one month before the attack, he had submitted an inmate request form to King and Ladner complaining about CMCF's policy or custom of commingling protective custody and general population inmates. Furthermore, he alleges that King and Ladner did nothing in response to his request. [1] at 11.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "It is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates." *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006). To prove an Eighth Amendment violation, a plaintiff must show the following two elements: "First, the deprivation alleged must be, objectively, sufficiently serious. . . . [T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (internal quotation marks and citations omitted). Second, a plaintiff must show that the prison official acted with deliberate indifference to that risk. In other words, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Turning to the first prong of the test, the Court observes that "[p]rison conditions may be

restrictive and even harsh, but . . . .[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 833. Plaintiff's claim raises a viable question of whether allowing him, as a protective custody inmate, to mingle with the general prison population raised a substantial risk of serious harm. *Morgan v. Hubert*, 335 F. App'x 466, 471 (5th Cir. 2009).

The Court recognizes that "[c]lassification of prisoners is a matter left to the discretion of prison officials." *McCord v. Maggio*, 910 F.3d 1248, 1250 (5th Cir. 1990). Nevertheless, when an inmate "has been placed in protective custody, for whatever reason, reasonable prison officials would recognize that commingling such inmates with the general prison population presents a substantial risk of violence. The primary purpose of placing inmates in protective custody is, as the name suggests, to protect them from prison violence." *Morgan*, 335 F. App'x at 471. Based on this reasoning, the Court concludes that if King and/or Ladner implemented a policy, custom, or practice of allowing protective custody inmates, including Plaintiff, to mingle with general population inmates, they may have created an objective and substantial risk to Plaintiff's safety.

As for the second prong, whether King or Ladner was deliberately indifferent to this risk, that is, whether they subjectively decided to disregard the risk of harm to Plaintiff, is a question that is left unanswered at this stage of the proceedings. *See Morgan*, 335 F. App'x at 472. At this juncture, King and Ladner have presented no evidence to answer this question. Accordingly, the motion for summary judgment is denied without prejudice as to King and Ladner so that they may refile a motion for summary judgment addressing these issues. *See John v. State of Louisiana*, 757 F.2d 698, 708 (5th Cir. 1985)(finding that if defendant fails to discharge the

burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied).

> 2. Defendants Fillyaw, Murriel, and Nunn

Plaintiff also argues that Defendants Fillyaw, Murriel, and Nunn violated his constitutional rights when they failed to protect him from the alleged sexual assault. To state a failure-to-protect claim against these Defendants, Plaintiff must meet the same criteria found in *Farmer* and discussed *supra*. That is, Plaintiff must first show that he was incarcerated under conditions posing a "substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Second, Plaintiff must show that the prison officials acted with deliberate indifference to that risk. *Id.*

According to Plaintiff's complaint and omnibus hearing testimony, he wrote to Fillyaw complaining of the commingling of protective custody inmates and general population inmates. [1] at 11; [101-1] at 21. Plaintiff also alleges that he verbally advised Fillyaw, Nunn, and Murriel of the specific threat from "Grim." [1] at 12; [101-1] at 7-8. Plaintiff has presented sufficient evidence that general population inmates, particularly "Grim," posed a substantial risk of serious harm to him. He, therefore, meets the first prong of the *Farmer* test.

However, there is no evidence in the record from Fillyaw, Murriel, or Nunn regarding the second prong of the *Farmer* test. There is no evidence of their knowledge of the alleged policy, custom, or practice of commingling the protective custody and general population inmates. Nor is there any evidence in the record addressing the question whether they subjectively decided to disregard the risk of harm to Plaintiff posed by the commingling of different classes of inmates. And although they ensured that a protective custody sign was placed on Plaintiff's cell door, this act does not answer the question whether they subjectively decided to disregard the risk of harm

posed to Plaintiff by "Grim." Accordingly, these Defendants have failed to discharge their burden of showing the absence of a genuine dispute concerning any material fact, and, on that basis, summary judgment is hereby denied. *See John*, 757 F.2d at 708.

IV. Conclusion

Accordingly, for these reasons, the Motion for Summary Judgment is hereby granted as to all defendants in their official capacities, granted as to Defendant Fisher in his individual capacity, and denied as to the remaining defendants, King, Ladner, Fillyaw, Murriel, and Nunn, in their individual capacities. By separate Order, the Court will give Defendants 30 days to file new summary judgment motions to address the remaining aspects of Plaintiff's claim.

SO ORDERED, this the 20th day of March, 2019.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE