IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

J.H.                                                                                              PLAINTIFF

VS.                                                                   CIVIL ACTION NO. 3:16-cv-26-FKB

MARSHALL FISHER, ET AL.                                                         DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion for Summary Judgment [117] filed by Defendants James Fillyaw, Ron King, Brian Ladner, Jamaal Murriel, and Kevin Nunn in this action brought pursuant to 42 U.S.C. § 1983. Plaintiff has responded [119] to the Motion, Defendants have filed a rebuttal [121], and Plaintiff has filed a sur-rebuttal [123].

In a previous Order [114], the Court granted in part and denied in part Defendants' motion for summary judgment [101]. Due to a lack of evidence, the Court ordered additional summary judgment briefing on whether Defendants King, Ladner, Fillyaw, Murriel, and Nunn were deliberately indifferent to the risk of harm to Plaintiff through a policy, custom, or practice of allowing commingling of protective custody and general population inmates. [114] at 7-8. Furthermore, the Court ordered additional summary judgment briefing on whether Defendants Fillyaw, Murriel, and Nunn subjectively decided to disregard the risk of harm posed to Plaintiff by the inmate known as "Grim." *Id.* at 8-9. For the reasons outlined in this Memorandum Opinion and Order, the Court finds that Defendants' motion for summary judgment should be denied.

I.    Facts

The facts in this case were detailed in the Order [114]. In sum, Plaintiff alleges that while

˘1˘

he was incarcerated at CMCF beginning August 4, 2015, Defendants failed to protect him when, despite his protective custody status and despite his warning to authorities that an inmate posed a threat to him, the inmate subsequently attacked and raped him on or about September 28, 2015. *Id.* at 1-3; [1] at 10-13. Defendants are Ron King, Superintendent of CMCF; Brian Ladner, Warden; James Fillyaw, Deputy Warden; Jamaal Murriel, officer; and Kevin Nunn, officer.

II. Relevant Standards

Rule 56 of the Federal Rules of Civil Procedure states, in part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In cases involving multiple defendants, the Court must consider the defendants' "individual roles in the disputed incidents." *Longoria v. Texas*, 473 F.3d 586, 593 (5th Cir. 2006). An issue of fact is genuine if the "'evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party.'" *Lemoine v. New Horizons Ranch and Center*, 174 F.3d 629, 633 (5th Cir. 1999)(quoting *Colston v. Barnhart*, 146 F.3d 282, 284 (5th Cir.), *cert. denied*, 525 U.S. 1054 (1998)). Issues of fact are material if "resolution of the issues might affect the outcome of the suit under governing law." *Lemoine*, 174 F.3d at 633. The Court does not, "however, in the absence of any proof, assume the nonmoving [or opposing] party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(emphasis omitted). Moreover, the non-moving party's summary judgment burden is not satisfied by "conclusory allegations" or by "unsubstantiated assertions," or by only a "scintilla" of evidence. *Little*, 37 F.3d at 1075.

Government officials performing discretionary functions are entitled to qualified

immunity from civil liability to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For qualified immunity purposes, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

As stated in *Longoria*:

> It is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832-833 (1994). Under *Farmer*, an inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials were deliberately indifferent to an inmate's safety. *Id.* at 834. An official acts with the requisite deliberate indifference if he is aware of an "excessive risk to inmate . . . safety" and disregards that risk. *Id.* at 837. In this context, an officer's awareness of the risk is evaluated subjectively. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must in fact also have drawn the inference. *Id.* No liability exists, however, if an official reasonably responded to a known substantial risk, 'even if the harm was ultimately not averted." *Id.* at 844.

*Longoria*, 473 F.3d at 592-593(footnotes omitted). Furthermore, if a defendant fails to discharge his burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana*, 757 F.2d 698, 708 (5th Cir. 1985). With these standards in mind, the Court turns to consider Plaintiff's claims.

III. Discussion

1. Commingling of Inmates – Defendants King and Ladner

After considering the evidence submitted by the parties, the undersigned finds that a genuine dispute of material fact exists regarding whether Defendants King and Ladner allowed a policy, pattern, or practice of commingling different classes of prisoners on the zone in which

Plaintiff was housed, and whether Defendants King and Ladner showed subjective deliberate indifference to Plaintiff, thereby resulting in his injuries.

Throughout this litigation, Plaintiff has consistently asserted that he was a protective custody inmate at the time of the alleged attack and that his alleged assailant, Austin Jones a/k/a "Grim," was a general population inmate. [1] at 9, 12; [101-1] at 5. He has argued that the Defendants' custom or practice of commingling inmates of different classes on his zone resulted in his alleged attack in September 2015.

Plaintiff asserts that he wrote a letter to Defendants King, Ladner, and Fillyaw complaining about the commingling of general population inmates and protective custody inmates about one month prior to the alleged attack. [1] at 9, 11. After no action was taken in response to his letters, he filed an emergency grievance on September 26, 2018, which was rejected by the Administrative Remedy Program within days of his alleged attack for not meeting emergency criteria. *Id.* at 11; [42] at 5-6. Plaintiff asserts that after meeting with Fillyaw, Murriel, and Nunn regarding the specific threat posed by "Grim" at some point prior to the attack, Defendant Murriel placed a protective custody sign on his door in an effort to protect him. [101-1] at 9-10. In prior briefing, Defendants acknowledged that Defendant Murriel placed a protective custody sign on Plaintiff's cell door. [102] at 11.

In a departure from their previous position, Defendants now assert that Plaintiff and Jones a/k/a "Grim" were both classified as "close custody—general population inmates" at the time of the alleged attack in September 2015. [117-1] at 4; [117-3] at 1. Defendants King and Ladner offer no affidavits in support of the motion for summary judgment. However, Defendant Fillyaw states in an affidavit that protective custody inmates were housed in Zone G, a separate zone

from the one in which Plaintiff and Jones were housed, Zone H, and that there was no commingling between the zones. [117-3] at 1. Therefore, Defendants reason that Plaintiff's claim based on commingling fails.

However, since the inception of this action, Plaintiff has steadfastly maintained that he was classified as a protective custody inmate, with a protective custody sign placed on his door by Defendants. And, as stated above, Defendants acknowledged that Defendant Murriel placed a protective custody sign on Plaintiff's door. [102] at 11. Although Fillyaw admits that at one time the facility "employed signs placed on doors to allow staff to easily determine the custody status of an inmate in a cell," he asserts that "the practice had been abandoned well prior to September 2015 due to inmates stealing signs off of other inmates' doors." *Id.* at 2. Along those lines, Defendants admitted in discovery that "protective custody signs were used to designate cells containing protective custody inmates," but they declined to delineate in which zones the signs were used. [119-5] at 2. Defendants also denied in discovery that Plaintiff's zone, Zone H, housed both protective custody and general population inmates. *Id.* However, a statement given by Plaintiff's alleged assailant Jones implies that protective custody inmates were housed on the same zone with him. [117-2] at 3 (". . . P.C. didn't come out with us period. . . ."). Nevertheless, Plaintiff's "Running Record" indicates that that he was recommended for "close custody" on August 27, 2015. [119-3] at 1. On the other hand, despite Fillyaw's insistence that the practice of placing protective custody signs on prisoners' doors had been abandoned, it is also unclear whether the facility may have continued to employ the protective custody signs as a form of informal administrative segregation within the close custody zone pending an inmate's official protective custody designation. *See* [119-6] at 2. As stated above, there are no affidavits in the

record from Defendants King and Ladner on any of these issues. Giving specific names, Plaintiff argues that certain CMCF employees exist who could give testimony on this issue, but asserts that as a *pro se* prisoner, he is unable to obtain their declarations. [123] at 2. Accordingly, because there is a genuine issue of material fact on this issue, and a lack of evidence regarding the objective reasonableness of the actions of Defendants King and Ladner, summary judgment as to King and Ladner is denied.

2. Failure to Protect Claim – Defendants Fillyaw, Nunn, and Murriel

Plaintiff argues that Defendants Fillyaw, Murriel, and Nunn violated his constitutional rights when they failed to protect him from the alleged sexual assault. After considering the evidence submitted by the parties, the undersigned finds that a genuine dispute of material fact exists regarding whether Defendants Fillyaw, Murriel, and Nunn had knowledge of a policy, pattern, or practice of commingling different classes of prisoners on the zone in which Plaintiff was housed, and whether Defendants Fillyaw, Murriel, and Nunn showed subjective deliberate indifference to Plaintiff, thereby resulting in his injuries.

As to their knowledge of a policy, pattern, or practice of commingling, Defendant Fillyaw has submitted an affidavit in support of the motion for summary judgment, but Defendants Murriel and Nunn have presented no affidavits. For the same reasons discussed in Section 1 *supra*, the Court denies Defendants Fillyaw, Murriel, and Nunn's motion for summary judgment as to the existence of a policy, pattern, or practice of commingling prisoners of different classifications within the Zone H.

Turning to the specific threat to Plaintiff from Jones a/k/a "Grim," Plaintiff alleges and has testified that he was escorted to the watch commander's office where he told Fillyaw, Nunn,

and Murriel about the threats from Jones about one week prior to the alleged attack. [1] at 12; [101-1] at 6-10. During the course of discovery, Defendants denied that Plaintiff was transported to the watch commander's office to speak with Defendants Fillyaw, Nunn, and Murriel prior to the alleged attack. [119-5] at 2. Defendant Fillyaw's affidavit is silent on this issue, [117-3], and there are no affidavits from Nunn and Murriel in the record. However, Plaintiff asserts that two different records dispute Defendants' depiction of events. Plaintiff has submitted an MDOC Unit Register that records on September 20, 2015, Plaintiff was one of two inmates escorted to the shift commander's office. [119-2] at 2. On September 21, a prisoner located in cell 253 was escorted to Defendant Fillyaw's office, and Plaintiff asserts that he was the prisoner. *Id.* at 3; [119] at 3.

Accordingly, there is a divergence of facts between Fillyaw's and Plaintiff's accounts of any alleged meeting where Plaintiff informed Fillyaw, Murriel, and Nunn of the threat from another inmate, as well as a lack of evidence from Murriel and Nunn on this issue. In addition, the accounts by Plaintiff and Defendants vary as to whether they took any steps to protect him by putting a protective custody sign on his door and whether, in general, they subjectively decided to disregard any risk of harm posed to Plaintiff by Jones a/k/a "Grim." Thus, the evidence creates a genuine issue of material fact as to Defendants' subjective knowledge of the existence of "an excessive risk to inmate safety" to Plaintiff from another inmate, and summary judgment must be denied.

IV. Conclusion

Accordingly, for these reasons, the Motion for Summary Judgment is hereby denied as to Defendants King, Ladner, Fillyaw, Murriel, and Nunn, in their individual capacities. By separate

Order, the Court will set this matter for trial.

SO ORDERED, this the 18th day of September, 2019.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE